

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2008

# Terrance Edmonds v. Raymond Sobina

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1851

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Terrance Edmonds v. Raymond Sobina" (2008). *2008 Decisions.* Paper 345.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/345

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

ALD-5                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1851
_____

TERRANCE L. EDMONDS,
                                        Appellant

v.

SUPERINTENDENT RAYMOND SOBINA; SECRETARY OF PRISONS
JEFFREY BEARD; CAPTAIN RISKUS; LIEUTENANT STEELE;
CORRECTIONS OFFICER MCGEEVER; CORRECTIONS OFFICER
D. MIORELLI; HEARING EXAMINER KERRI CROSS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 06-cv-00144)
District Judge:  Honorable Sean J. McLaughlin
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 9, 2008

Before: SLOVITER, FUENTES and JORDAN, Circuit Judges

(Opinion filed:  October 20, 2008)
_____

OPINION
_____

PER CURIAM

1

Terrance L. Edmonds, a Pennsylvania state prisoner proceeding pro se, appeals from the order of the United States District Court for the Western District of Pennsylvania granting summary judgment and dismissing his 42 U.S.C. § 1983 action, which challenged the prison's disciplinary action against him for possessing contraband and the prison regulation that permits the confiscation of UCC-related material. We will summarily affirm.

Edmonds is and was, at all times relevant to this appeal, a prisoner incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"). On December 7, 2005, Correctional Officers McGeever and Miorelli conducted an investigative search of Edmonds's cell in his presence and confiscated certain UCC-related material and other papers.[1] Edmonds was placed in the Restrictive Housing Unit (RHU) pending further investigation. See Defendant's Motion for Summary Judgment, Exh. "A." Edmonds was charged with possessing contraband two days later. After a

---

[1] The "Confiscated Items Receipt (Inmate)" identifies the documents as follows: (1) a trial deposition with Judges names on it; (2) paperwork for the Social Security Administration; (3) an envelope addressed to the Internal Revenue Service; (4) an envelope addressed to Internal Revenue Service "Notice of Contract Cancellation"; (5) an envelope addressed to John Snow, Secretary of the Treasury; (6) a "(Notice) Declaration of Independence of Sovereign States"; (7) "Disclosure of [illegible] on statute, cover letter"; (8) Financial Statement and an Addendum cover letter; (9) Declaration of Independence "Sovereign [illegible]"; (10) an envelope entitled "Non-negotiable Actual & Constructive office"; (11) a Security Agreement; (12) a Non-Negotiable Bill of Exchange; (13) an Affidavit & Certification of Withdrawal; (14) a Request for Withdrawal of Application; (15) various paperwork; (16) "1 interdepartmental envelope with various UCC information"; and (17) eight pages of yellow legal pad paper with UCC information on it. See Plaintiff's Motion for Summary Judgment, at Exh. G. All items listed, except No. 15, were identified as UCC-related material. Id.

hearing, Disciplinary Hearing Officer Kerri Cross found Edmonds guilty based on his admission that the seized items were his and on the officer's misconduct report. Edmonds was ordered to serve 90 days in the RHU. His administrative appeals were denied.

Edmonds immediately filed a grievance on the day that his cell was searched, complaining, among other things, that the defendants violated due process by confiscating his UCC materials and that they failed to provide him with the appropriate form detailing the items they confiscated. Plaintiff's motion for summary judgment, "Exh. E." Lieutenant Mongelluzzo denied the grievance because the legal team of the Central Office Security Department determined that the UCC-related material was "not legal work." Id. He suggested that Edmonds explain why the material was legitimate. Id. In his appeal to Superintendent Sobina, Edmonds explained that he needed the UCC material because he was "being held in confinement/incarceration under fraudulent pretenses and that with the assistance of UCC material everything will be rectifide (sic)."[2] Id. Sobina upheld the denial of the grievance, stating that the confiscated material posed a security risk. The Chief Grievance Officer denied Edmonds's appeal, noting that his explanation as to the legitimacy of the UCC-related material lacked merit. Id.

Edmonds filed a § 1983 complaint, claiming that the investigative cell search and

---

[2] Edmonds prefaced his explanation with this remark: "[g]rievant was trying to hold off on the legalities of the UCC materials until we've all reached civil court, however, grievant will provide a reasonable and short version of why the material is vital for grievant." Plaintiff's motion for summary judgment, "Exh. E."

seizure of his UCC-related materials was illegal under the Fourth Amendment. He also asserted that the defendants violated due process by charging him with possession of contraband pursuant to DOC-ADM 803(VI)(D)(1)(g), and by finding him guilty of the misconduct charge "without any evidence." He contended that the disciplinary sanction of ninety days in RHU violated the Eighth Amendment. He charged that the defendants' confiscation of his UCC-related materials violated his right of access to the courts under the First Amendment. He sought declaratory and injunctive relief and damages.[3]

The defendants filed an Answer, followed by a motion for summary judgment, to which Edmonds responded.[4] The Magistrate Judge recommended granting summary judgment in the defendants' favor on all of Edmonds's claims. Specifically, the Magistrate Judge concluded that the Fourth Amendment does not apply to prison cell searches and that the DOC's post-deprivation remedy was constitutionally adequate. She found that "some evidence" existed to support the disciplinary hearing officer's guilty finding, and that, in any event, his placement in the restrictive housing unit did not implicate a protected liberty interest. The Magistrate Judge found that the DOC's

---

[3] Edmonds filed motions for a preliminary injunction and for a temporary restraining order, both of which the District Court denied. Edmonds filed a notice of appeal, which was later dismissed by agreement of the parties.

[4] We note that the Defendants did not raise non-exhaustion as a ground for granting summary judgment in their favor. In any event, there is more than ample record evidence establishing that Edmonds exhausted his available administrative remedies by pursuing a grievance to completion and by appealing his discipline through the appropriate administrative channels.

4

restriction on the possession of UCC-related materials did not violate due process because it was reasonably related to a legitimate penological interest. The Magistrate Judge also determined that Edmonds's placement in the RHU for ninety days did not violate the Eighth Amendment's prohibition against cruel and unusual punishment and that he was not denied access to the courts because he failed to demonstrate an actual injury to his ability to litigate an arguably actionable claim. Edmonds objected. The District Court overruled the Objections, adopted the Magistrate Judge's Report, and granted summary judgment in favor of the defendants and against Edmonds. Edmonds filed this timely appeal.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Upon de novo review of the record and careful consideration of Edmonds's response to the notice of possible summary action, we conclude that no substantial question is presented on appeal and that summary action is warranted. See LAR 27.4 and I.O.P. 10.6. We agree with the Magistrate Judge's reasoning and conclusions as to Edmonds's First Amendment access-to-the-courts claim and his claims based on the Fourth and Eighth Amendments. With respect to Edmonds's claim challenging the disciplinary hearing officers' guilty finding, we conclude that his discipline did not deprive him of any constitutionally protected liberty interest. State-created liberty interests protected by the Due Process Clause are limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S.

5

472, 484 (1995). Edmonds's confinement in the RHU for ninety days does not impose on him an "atypical and significant hardship." See Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997) (holding that fifteen months in administrative custody is not an "atypical and significant hardship"). Thus, his claim that the hearing officer's finding lacked "some evidence" to support it does not amount to a due process violation.

That leaves the First Amendment claim regarding the confiscation of UCC-related materials pursuant to DOC-ADM 803(VI)(D)(1)(g).[5] Edmonds asserts that the defendants deprived him of his First Amendment right to possess legal material. Edmonds is frank about his belief in "redemptive process" theory and in his right to copyright or trademark his name in order to prevent public officials from using it without "just compensation." See Complaint at ¶ 19; Plaintiff's Response to Defendants' Motion for Summary Judgment at 4-5. The items confiscated from his cell include the kind of papers and documents that are necessary for filing a UCC commercial lien.

The District Court properly concluded that the DOC policy, which restricts an inmate's possession of UCC-related materials, does not violate Edmonds's First Amendment right to possess legal materials. Recently, we had occasion to review the

---

[5] Edmonds alleges that he never received the "D-Form" referenced in DOC-ADM(VI)(D)(1)(g) and that he received his copy of the confiscated items report on January 11, 2006, about a month after his materials were seized. To the extent that he raised a Fourteenth Amendment post-deprivation remedy claim, we agree with the Magistrate Judge's reasoning and conclusion that the DOC's post-deprivation remedy was adequate in Edmonds's case. Edmonds filed a grievance and was given an opportunity to identify a legitimate purpose for the UCC-related materials during the course of the prison grievance process, which he failed to do.

DOC memorandum issued in July 2005, the precursor to DOC-ADM 803(VI)(D)(1)(g), in Monroe v. Beard, 536 F.3d 198 (3d Cir. 2008). There, we held that the DOC policy providing for the confiscation of UCC-related materials, publications, and information on copyrighting names is not constitutionally unreasonable under Turner v. Safley, 482 U.S. 78 (1987). Id. at 207-09. Our holding and rationale in Monroe apply with equal force to DOC-ADM 803(VI)(D)(1)(g). The policy "is reasonably related to the DOC's interest in protecting government officials from fraudulent liens." Id. at 208. The regulation is intended to address the practice among inmates in Pennsylvania of filing fraudulent liens against public officials (including correctional officers and administrators) pursuant to so-called "redemption" and name copyrighting schemes, among others. Id. at 202 n.2, 208. Courts have uniformly declared such commercial liens brought by inmates against prosecutors, judges, correctional officers and other government employees, as null and void. Id. at 202 n.2 (citation omitted).

Moreover, DOC-ADM 803(VI)(D)(1)(g) does not impinge on Edmonds's right to possess publications and legal materials in general; thus, he continues to have an alternate means of exercising his First Amendment rights. Id. at 208-209. The burden on DOC of fighting inmates' false liens is great. As we noted in Monroe, accommodating the right of inmates to possess UCC-related materials without restriction would effectively encourage more inmates to file false liens against public officials in order to harass and intimidate them, resulting in the needless expenditure of public funds to adjudicate the liens in court

7

and have them declared null and void.  Id. at 209.  As for alternatives to the regulation, Edmonds argues that a court, not the DOC, should decide in the first instance whether his UCC-related materials are legitimate or not.  We disagree.  The DOC is not required to use "the least restrictive means possible" to further its legitimate penological interests, and, thus, the prison need not wait until an inmate actually files a false lien claim in court before confiscating the inmate's UCC-related material.  Id.

Accordingly, we will summarily affirm the judgment of the District Court. Appellant's motion for appointment of counsel is denied.